(929 P.2d 173)
No. 73,972

STATE OF KANSAS, *Appellee*, v. GREGORY J. MARINO, *Appellant*.

Opinion filed November 27, 1996.

*Gregory J. Marino*, appellant pro se.

*Stephen M. Howe*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., ROGG, S.J., and D. KEITH ANDERSON, District Judge, assigned.

LEWIS, J.: Defendant Gregory J. Marino was convicted, after a trial to the court, of false impersonation, a class B misdemeanor. He was sentenced to a term of 90 days in jail and 2 years on probation. He appeals, raising a plethora of issues.

Defendant is a graduate of the University of Kansas and Harvard Law School. However, he is not now, and was not at the crucial

times involved in this case, a licensed practicing lawyer of the state of Kansas. It does not appear from the record that defendant has ever been a licensed practicing lawyer in this state, although he may have had a temporary permit to practice for a short time. Defendant is no stranger to the Court of Appeals. In 1990, defendant was convicted of aggravated failure to appear. He appealed that conviction to this court, and we affirmed his conviction in *State v. Marino*, case No. 65,311, unpublished opinion filed July 26, 1991, *rev. denied* 249 Kan. 777 (1991). In 1989, defendant was convicted of possession of cocaine, possession of molotov cocktails, and carrying a concealed weapon. He appealed those convictions to this court, and we affirmed his convictions in *State v. Marino*, case No. 64,767, unpublished opinion filed April 26, 1991, *rev. denied* 249 Kan. 777 (1991).

In this case, it was defendant's decision to appear on a local access cable program in Johnson County that ultimately proved to be his undoing. The name of the program was "Around Town" and was hosted by Anne Debus. Defendant's appearance on the show was taped in July 1993 and was aired four times in September 1993. The purpose of defendant's appearance was to promote a screenplay, which he had written and hoped to parlay into a locally produced movie.

At the beginning of the program, Ms. Debus obtained some background information from defendant and then the following exchange took place:

Ms. Debus: "There are also people that may look at you and say, 'That face is familiar. I know that man. He's my attorney.' "
Defendant: [No audible response.]
Ms. Debus: "You're a lawyer?"
Defendant: "Yeah, I've been practicing here in Kansas City off and on for about the last 8 years."
Ms. Debus: "Right out here in our back yard?"
Defendant: "That's right."
Ms. Debus: "Down here on College Boulevard?"
Defendant: "That's right."
Ms. Debus: "You do criminal law and . . . ?"
Defendant: "Divorce."

Someone called the attention of the Johnson County District

Attorney's office to the program and, in January 1994, defendant was charged with false impersonation of a lawyer. The charges were based on the comments made by defendant on "Around Town," which are set forth above.

Defendant was charged with and convicted of a violation of K.S.A. 21-3824(a), which reads: "False impersonation is representing oneself to be a public officer or public employee or a person licensed to practice or engage in any profession or vocation for which a license is required by the laws of the state of Kansas, with knowledge that such representation is false."

Defendant raises no fewer than 16 specifications of error. We will attempt to deal with each issue as briefly as possible.

## DISCRIMINATORY PROSECUTION

Defendant suggests that the Johnson County District Attorney prosecuted him because of "a personal animus" and that the prosecution was discriminatory in nature.

"Discriminatory prosecution is recognized as a valid defense to a criminal prosecution based on the Equal Protection Clause of the Fourteenth Amendment." *State ex rel. Murray v. Palmgren*, 231 Kan. 524, Syl. ¶ 1, 646 P.2d 1091 (1982).

In the *Murray* opinion, the court stated:

"To be successful, a defendant alleging discriminatory prosecution must show: 1) Others who are similarly situated are not generally prosecuted for conduct similar to that for which defendant is being prosecuted, and 2) the defendant has been intentionally and purposefully singled out for prosecution on the basis of an arbitrary or invidious criterion. [Citations omitted.]" 231 Kan. at 528.

The problem with defendant's argument concerning discriminatory prosecution is that he produced absolutely no evidence to support the claim. There is nothing in the record to show that others had engaged in similar conduct without prosecution and nothing to prove that defendant was singled out for prosecution. The mere facts that there do not appear to be other prosecutions under this statute or that the Johnson County District Attorney may not personally like defendant simply do not show that the prosecution was discriminatory.

There is no evidence in the record to support the test laid down by the Kansas Supreme Court in *Murray v. Palmgren* as set forth above. Defendant's argument is without merit.

## IS K.S.A. 21-3824 VOID FOR VAGUENESS?

This is a constitutional question. Determining a statute's constitutionality requires an interpretation of the statute. "An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). In addition: "[A] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992).

The defendant contends K.S.A. 21-3824 is unconstitutionally vague.

"The criminal standard [for determining when a statute is unconstitutionally vague] requires a determination of whether the statute's

'language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.' [Citation omitted.]" 251 Kan. at 243.

The Supreme Court in *Boatright* set the standard by which this issue is to be determined when it said: "We hold the language of K.S.A. 1991 Supp. 74-8810(g) conveys a sufficiently definite warning when measured by common understanding and practice to apprise the public of the prohibited activity. Hence, we hold the statute is not unconstitutionally vague." 251 Kan. at 245.

A statute is not void for vagueness if it apprises the public of the activity prohibited when measured by "common understanding and practice." 251 Kan. at 245. As tested by that standard, the statute in question is not void for vagueness.

K.S.A. 21-3824 makes it a crime to claim or represent that one is licensed to practice or engage in any profession or vocation for which a license is required in this state while knowing that such

representation is false. We conclude that there is nothing vague about the definition of the crime as set forth in the statute and that no one need necessarily guess at the meaning of the statute. There is certainly nothing vague about the activity prohibited. As a Harvard Law School graduate, defendant knew that a license was required to practice law in the state of Kansas, knew that he did not have such a license, and knew that the statute prohibited him from claiming to be a licensed lawyer.

Defendant argues the statute is unconstitutionally vague because it does not define "representing" or "engaged."

"Legislation is unconstitutionally vague when one cannot reasonably understand that his contemplated conduct is within the scope of that proscribed by the legislation. . . . . However, 'ultimate, god-like precision' is not required by the Constitution. [Citation omitted.] The Constitution 'does not require impossible standards'; it is satisfied by statutory language which 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.' [Citation omitted.] That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. [Citations omitted.]" *Hearn v. City of Overland Park*, 244 Kan. 638, 640-41, 772 P.2d 758 (1989).

We reject the argument that the words "representing" and "engage" are so vague or hypertechnical that a person with common intelligence would have to guess as to their meaning. The statute makes it a crime to claim to be a licensed lawyer when one is not. That is clear, and no one need guess at the meaning of the statute.

We hold that K.S.A. 21-3824 is not unconstitutionally vague. Defendant's argument to the contrary is without merit.

## IS K.S.A. 21-3824 OVERBROAD?

Defendant next argues that the statute in question is unconstitutionally overbroad. That concept was discussed in *City of Wichita v. Wallace*, 246 Kan. 253, 264, 788 P.2d 270 (1990), as follows:

" '[V]agueness' and 'overbreadth' are sometimes used interchangeably or a clear distinction is not made between the two terms. However, these terms are not synonymous. A statute or ordinance can be clear and unambiguous but may nevertheless be overbroad if it prohibits constitutionally protected conduct. [Citation omitted.] In *State ex rel. Murray v. Palmgren*, 231 Kan. at 533, we said: 'While a

vague statute leaves persons of common intelligence to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected.' [Citations omitted.]" 246 Kan. at 264.

"Obviously, almost every law is potentially applicable to constitutionally protected acts. A successful overbreadth challenge can thus be made only when 1) the protected activity is a significant part of the law's target, and 2) there exists no satisfactory method of severing that law's constitutional from its unconstitutional applications." *State ex rel. Murray v. Palmgren*, 231 Kan. at 533. For instance, in *Murray*, the court said:

"Elected officials have no constitutional right to conduct government affairs behind closed doors. Their duty is to inform the electorate, not hide from it. The KOMA places no constraints on purely private discussions by public officials. It regulates only the conduct of public business. As such the KOMA is not unconstitutionally overbroad." 231 Kan. at 534.

In this case, the only prohibited act is to represent that one is licensed to practice law when one is not. There is no constitutionally protected act which is prohibited or curtailed. We hold that the statute is not constitutionally overbroad.

Defendant seems to want us to believe that all he said was that he was trained as an attorney and that he never claimed to practice law. His argument is derailed by the record of the television interview. He very clearly told the interviewer that he had practiced law around the area off and on for about 8 years. This was clearly a representation that he was a licensed practicing attorney, it was clearly false, and it was a violation of the statute in question.

## BEYOND THE POLICE POWER

Defendant next argues that it is beyond the police power of the State to criminalize the actions prohibited by K.S.A. 21-3824.

This argument is completely without merit, and we reject it based on the following Kansas decisions: *Robert L. Rieke Bldg. Co. v. City of Overland Park*, 232 Kan. 634, 639, 657 P.2d 1121 (1983); *State ex rel. Stephan v. Lane*, 228 Kan. 379, 384, 614 P.2d 987 (1980); *Kansas State Bd. of Pharmacy v. Wilson*, 8 Kan. App. 2d 359, 657 P.2d 83 (1983).

The cases cited above establish that the State may take measures which are not unduly oppressive to protect against a legitimate menace to society. We consider it to be a legitimate menace to society for people to claim they are licensed lawyers when they are not. The means devised to protect against this threat is not unduly oppressive. We hold that the legislature clearly had the police power to enact K.S.A. 21-3824. Defendant's arguments to the contrary are without merit.

## SUFFICIENCY OF THE COMPLAINT

The complaint in this case alleged the following:

"[O]n or about the 15th day of July, 1993, through the 16th day of September, 1993, in the City of Overland Park, County of Johnson and State of Kansas, GREGORY J. MARINO did then and there knowingly, unlawfully, and willfully represent himself to be a person licensed to practice or engage in a profession for which a license is·required by the State of Kansas, to-wit: an attorney, with knowledge that such representation was false in violation of K.S.A. 21-3824 and K.S.A. 22-4502(1)(b)."

Defendant argues that the complaint was insufficient because it did not allege what specific actions by defendant constituted impersonating a lawyer. This argument is without merit.

"The sufficiency of the charging document is measured by whether: (1) it contains the elements of the offense intended to be charged, (2) it sufficiently apprises the defendant of what he or she must be prepared to meet, and (3) it is specific enough to make a subsequent plea of double jeopardy possible. The charging document is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or words of the same import. [Citations omitted.]" *State v. Reed*, 254 Kan. 52, 57, 865 P.2d 191 (1993).

We have read the complaint which is the subject of defendant's claim of error. We conclude that it complies in every respect with the rule announced in *State v. Reed*. We do not hesitate to conclude that the allegations of the complaint were sufficient.

We also feel compelled to add that even if we were to assume the complaint was insufficient, it would be of little aid to defendant. There is absolutely nothing in the record to indicate that defendant was prejudiced in any fashion by the wording of the complaint in this case. See *State v. Bird*, 238 Kan. 160, 168, 708 P.2d 946 (1985).

## AMENDMENT OF COMPLAINT

At the hearing on defendant's motion in limine and motion to dismiss, the trial court and the parties discussed adding an additional charge to the complaint. The State indicated it had evidence that defendant had stated he was a practicing lawyer in a magazine article. The State indicated it was considering adding a second count to the complaint to allege that the magazine article was another violation of the law. This was a completely separate incident from the TV show and had nothing to do with the charges in the original complaint. In this context, the trial court gave the State 10 days to file an amended complaint to add this new charge. It also gave defendant 10 days after the new complaint was filed to file a motion for a jury trial.

The State did not file the amended charge discussed. However, a number of days after the 10-day time limit set by the court, the State filed a motion to amend its complaint, asking that it be permitted to correct a mistake in the time elements alleged in the complaint. Defendant objected, claiming the amendment violated the 10-day time limit earlier set by the trial court. The trial court disagreed and denied defendant's motion.

We find no error in the trial court's action. We have read the record, and the 10-day time limit set by the court related only to the filing of a second count charging a new incident of false impersonation. The amendment allowed by the court did not relate to the filing of a second count but only to the amendment of the dates alleged in the original complaint. The 10-day time limit set by the trial court for amending the complaint to add a new charge did not apply to the amendment allowed, and defendant's arguments to the contrary are without merit.

We hold the trial court did not abuse its discretion in permitting the State to amend its complaint and that defendant's substantial rights were not prejudiced by the amendment. See *State v. Woods*, 250 Kan. 109, 115, 825 P.2d 514, *cert. denied* 506 U.S. 850 (1992).

Defendant argues we should examine the trial court's "bench notes" on this subject. We have examined the record on appeal; the bench notes are not in it, and we find no Rule 3.02 (1996 Kan.

Ct. R. Annot. 17) request by defendant that they be included. The burden is on an appellant to designate a record sufficient to support his claims on appeal. *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994). We hold the trial court did not err in permitting the State to amend its complaint to allege an additional date that was not set forth in the original document.

## AMENDMENT BY INTERLINEATION

The trial court allowed the State to amend its complaint by interlineation. The complaint was amended to add the date of the taping of the interview in addition to the date it was aired as the dates on which defendant violated the statute. This was accomplished by adding the new date in handwriting to the original complaint.

Defendant argues he was prejudiced by the court's failure to require the State to file an amended complaint. We disagree.

In *State v. Dodd*, 11 Kan. App. 2d 513, 515, 728 P.2d 402 (1986), we held that an oral amendment, made on the record, was sufficient. In this case, the complaint was amended on the record and by interlineation. This is plainly sufficient under the rule set forth in *Dodd*, and defendant's claims to the contrary are without merit.

## DEFENDANT'S REQUEST FOR A JURY TRIAL

K.S.A. 22-3404(1) requires that trial of misdemeanor offenses shall be made to the court unless a defendant requests a trial by jury "not later than seven days after first notice of trial assignment is given to the defendant or such defendant's counsel."

In the matter now under consideration, defendant did not request a jury trial within the time limit required by K.S.A. 22-3404(1). However, defendant now argues he should have been allowed to request a jury trial within 10 days of the trial court's order allowing the State to amend its complaint by interlineation.

We have previously dealt with the propriety of the trial court's allowance of the motion to amend filed by the State. The 10-day time period given to defendant to request a jury trial applied *only if* the State added a new, second count to its complaint. The State did not do so, and defendant's right to request a jury trial out of

time never matured. We hold that the trial court did not err in denying defendant's request for a jury trial made long after the time period specified in 22-3404(1) had expired.

## DEFENDANT'S PRETRIAL MOTION

Defendant complains that the trial court erred in failing to rule on his motion to dismiss when it was renewed on the day of trial.

The record shows that the trial court denied defendant's motion to dismiss at a pretrial hearing. The renewal of the motion to dismiss on the date of trial was done by defendant's counsel to protect the record on appeal. The comments made by defense counsel on the renewal of the motion to dismiss indicated he did not expect the trial court to reconsider his arguments again and to make new rulings on each of the several areas he mentioned. The motion to dismiss as presented on the day of trial was precisely the same motion previously denied by the trial court. There was no new evidence or allegations presented when the motion was renewed. We hold there was no reversible error by the trial court's failure to rule on the motion to dismiss as renewed on the date of trial.

## TRIAL COURT'S PREJUDICE

Defendant claims the trial court was prejudiced against him. He cites six specific examples which he claims demonstrate the trial court's prejudice:

"The standard of judicial review is unlimited in a case alleging judicial misconduct during trial. The standard of judicial review refers to the legal scale used in weighing the sufficiency of the facts and circumstances giving rise to the alleged judicial misconduct. Where a construction can properly and reasonably be given a remark which will render it unobjectionable, the remark will not be regarded as prejudicial. In a case in which judicial misconduct during trial is alleged, an appellate court is required to decide whether the defendant's substantial rights to a fair trial have been prejudiced." *State v. Plunkett*, 257 Kan. 135, Syl. ¶ 1, 891 P.2d 370 (1995).

We have examined all six of defendant's examples of prejudice. We hold that none of those examples illustrates any undue prejudice by the trial court.

Defendant has failed to show that the trial court was prejudiced within the parameters of *State v. Plunkett.* There was no judicial

misconduct that prejudiced defendant's substantial rights to a fair trial. We reject defendant's claim of reversible error on the ground of prejudice against him by the trial court.

## AFFIDAVIT AS EVIDENCE

At trial, the affidavit of Carol Green, the Clerk of the Kansas Appellate Courts, was introduced into evidence to prove that defendant was not admitted to practice law in the state of Kansas.

The affidavit was admitted under K.S.A. 60-460(o)(2) as an exception to the exclusion of hearsay evidence. Defendant now complains that the admission of the affidavit was error because he was never given a copy of the affidavit as required by K.S.A. 60-461.

Defendant failed to raise this specific objection at trial. His only objection to the affidavit was lack of foundation. Defendant failed to raise the issue he now attempts to raise on appeal to the trial court. An appellant may not raise an issue on appeal that was not raised to the trial court. *State v. Kliewer*, 210 Kan. 820, 824-25, 504 P.2d 580 (1972).

## EVIDENCE OF DEFENDANT'S LICENSING IN OTHER STATES

Defendant argues the State failed to meet its burden of proof when it failed to show he was not licensed to practice law in any other states.

This argument is totally without merit. The definition of false impersonation does not include an element that a defendant is not licensed to practice law in any other state. The State was required to prove only that defendant was not licensed to practice law in Kansas, not that he was not licensed in any other states. This was not part of its burden of proof, and defendant's argument to the contrary is rejected.

## STATE'S BURDEN OF PROOF

Defendant next argues that the State erred by not presenting evidence that a license is required in Kansas in order to practice law. He also argues the State failed to sustain its burden of proof

by not asking the trial court to take judicial notice of the fact that a license is required to practice law in the state of Kansas.

Defendant acknowledges, however, that this court on appeal is allowed to take judicial notice of unproven elements of the State's complaint, pursuant to K.S.A. 60-412(c). He asks us not to do so. We decline his invitation.

K.S.A. 60-412(c) states: "The reviewing court in its discretion may take judicial notice of any matter specified in K.S.A. 60-409 whether or not judicially noticed by the judge." The fact that a license is required by Kansas law for an attorney to practice in this state is subject to judicial notice pursuant to K.S.A. 60-409(b)(1).

In *State v. Wolfe*, 194 Kan. 697, 698-99, 401 P.2d 917 (1965), the Kansas Supreme Court took judicial notice, pursuant to K.S.A. 60-412(c), of the fact that the Kansas State Penitentiary is located in Leavenworth County. Accordingly, we take judicial notice of the fact that an attorney is required to be licensed and admitted to the bar in order to practice law in the state of Kansas. See Supreme Court Rule 208 (1996 Kan. Ct. R. Annot. 210). We hold that defendant's argument on this issue is without merit.

## SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his conviction.

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Johnson*, 255 Kan. 140, Syl. ¶ 1, 871 P.2d 1246 (1994).

We have carefully examined the record in this case. We conclude that based on the evidence presented, a rational factfinder could have found defendant guilty beyond a reasonable doubt.

Defendant's claim that the record did not contain sufficient evidence to support his conviction is without merit.

## MOTION FOR ARREST OF JUDGMENT

Defendant next contends that the trial court erred by failing to rule fully on his amended motion for arrest of judgment and spe-

cifically failed to address the "licensure-lack of evidence or judicial notice argument."

Defendant filed a motion for arrest of judgment and/or motion for a new trial after the trial had been completed. He subsequently filed an amended motion for arrest of judgment some days later, alleging the judgment was void because the State had failed to prove defendant was not licensed in any other states or that Kansas requires a license to practice law. We have examined the trial court's ruling on defendant's motion for arrest of judgment. We agree that the trial court may not have specifically addressed every detail of defendant's arguments in its ruling, but after ruling, it asked defendant if there was anything further, and defendant replied that there was not. We conclude that had defendant felt the trial court had failed to rule on his motion in full, he should have stated so at that time. See *State v. Boyd*, 257 Kan. 82, 89, 891 P.2d 358 (1995). We find no reversible error in the manner in which the trial court dealt with defendant's motion for arrest of judgment.

## CUMULATIVE ERRORS

Finally, we reach the last issue raised by defendant. Defendant now argues that the cumulative effect of the trial court's errors at trial prevented him from receiving a fair trial. We disagree.

" ' "Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant." ' " *State v. Castoreno*, 255 Kan. 401, 411, 874 P.2d 1173 (1994) (quoting *State v. Lumbrera*, 252 Kan. 54, 57, 845 P.2d 609 [1992]).

Defendant does not make a specific argument on the issue of cumulative errors but merely invites this court to read the complete record on appeal and to view the videotaped interview. We have done so. We are convinced that the evidence against defendant was overwhelming. Therefore, even if there were cumulative trial errors, which we do not find, defendant was not prejudiced or

denied a fair trial. Defendant's argument to the contrary on this issue is without merit.

Affirmed.